

IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF WEST VIRGINIA

IN THE MATTER OF THE TRACKING OF
2019 Ford Fusion, West Virginia
REGISTRATION 65V273,
VIN: 3FA6POLU9KR141856

Case No. 2:23-mj-00047

**Filed Under Seal**

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A TRACKING WARRANT

I, Owen B. Morris, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a tracking warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117 to authorize the continued monitoring of a tracking device currently installed on a **2019 Ford Fusion** bearing **West Virginia registration 65V273** and Vehicle Identification Number (VIN) **3FA6POLU9KR141856** ("the SUBJECT VEHICLE"). The SUBJECT VEHICLE is registered to "ESTELLA J NAPPIER." The SUBJECT VEHICLE is utilized by **KARL FUNDERBURK (hereinafter "FUNDERBURK")**. Based on the facts set forth in this affidavit, I believe that the SUBJECT VEHICLE is presently being used in furtherance of (i) the distribution and possession with intent to distribute controlled substances, to include methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and (ii) conspiracy to commit and attempts to commit these offenses, in violation of 21 U.S.C. § 846; and that there is probable cause to believe that the installation of a tracking device on the SUBJECT VEHICLE and use of the tracking device will lead to evidence, fruits and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

2. I am currently a Detective with the Metro Drug Unit (also known as the "Metropolitan Drug Enforcement Network Team" and hereinafter referred to as "MDENT") in Charleston, Kanawha County, West Virginia and an active Task Force Officer ("TFO") with the Federal Bureau of Investigation ("FBI") Toc West Task Force. I have been employed by the Charleston Police Department for sixteen years. From approximately October of 2020 until present, I have been assigned to MDENT as a case agent. As a Detective for MDENT, I am charged with enforcing the Controlled Substances Act, Title 21, United States Code, the West Virginia Uniform Controlled Substance Act, and other duties as imposed by law. I have completed training within this field including the 2018 WVNOA Conference which covers various aspects of drug work including highway interdiction, knock and talks, working with informants, and other narcotics related matters. I have attended a Title III class through the FBI and have assisted and worked on multiple Title III drug investigations. I have also attended numerous training courses in reference to cultivating and managing confidential informants and money laundering. I have also attended training involving video surveillance techniques for narcotics investigations. During my tenure with the Charleston Police Department, MDENT, and as a TFO with the FBI, I have participated in numerous drug investigations during the course of which I have (a) conducted physical and wire surveillance; (b) executed search warrants at locations where drugs, drug proceeds, and records of drugs have been found; (c) reviewed and analyzed numerous taped conversations and records of drug traffickers; (d) debriefed cooperating drug traffickers; (e) monitored wiretapped conversations of drug traffickers; and (f) conducted surveillance of individuals engaged in drug trafficking. Through my training and experience, I have become familiar with: (a) the manner and methods by which illegal drugs are imported and distributed; (b) the methods of payment for such drugs; and (c) the efforts of persons involved in such activities

to avoid detection by law enforcement. I am an investigative or law enforcement officer within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516. Among other duties, I am participating in an investigation relating to the distribution of controlled substances by FUNDERBURK, ANTONIO JEFFRIES (hereinafter "JEFFRIES"), other persons known, and others yet unknown ("SUBJECTS" or "SUBJECT INDIVIDUALS").

3. On January 20, 2023, the Honorable Dwane L. Tinsley, United States Magistrate Judge for the Southern District of West Virginia, signed a tracking warrant (2:23-mj-00012) authorizing the installation and monitoring of a GPS tracking device on the SUBJECT VEHICLE for 45 days. The authorization granted by that warrant will expire on March 6, 2023.

4. On January 24, 2023, the Honorable Thomas E. Johnston, Chief United States District Court Judge in the Southern District of West Virginia, entered an order authorizing the interception of wire and electronic communications over a telephone used by FUNDERBURK ("TARGET TELEPHONE #6") Interceptions expired on February 23, 2023. On February 28, 2023, the Honorable Thomas E. Johnston, Chief United States District Court Judge in the Southern District of West Virginia, entered an order authorizing the continued interception of wire and electronic communications over TARGET TELEPHONE #6. Intercepted communications have confirmed that FUNDERBURK is involved in distributing controlled substances in and around Kanawha County, West Virginia and within the Southern District of West Virginia. Interceptions are scheduled to expire on March 30, 2023.

5. Surveillance officers have observed FUNDERBURK driving the SUBJECT VEHICLE and other vehicles to facilitate drug transactions. The geolocation information obtained through the use of the tracking device sought herein, will assist officers in determining the location

3

of specific drug transactions, the identity and location of FUNDERBURK's drug supplier or suppliers, as well as confirming known places and possibly discovering unknown places where he stores his drugs and drug proceeds. Thus, the location of the SUBJECT VEHICLE will constitute or lead to the discovery of evidence relevant to the subject offenses listed above.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Summaries of recorded conversations set forth in this affidavit are based on draft transcripts of those conversations. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## PROBABLE CAUSE

7. On or about August 13, 2018, FUNDERBURK was convicted in the United States District Court for the Southern District of West Virginia of the felony offense of Use of Firearm in Furtherance of Drug Trafficking Crime in violation of 21 U.S.C. § 924(c)(1)(A). FUNDERBURK received a prison sentence of 60 months, to be followed by five years of supervised release. FUNDERBURK is on federal supervised release until 2026.

8. On February 2, 2023 at 4:22 PM, FUNDERBURK, on TARGET TELEPHONE #6 (Session 01879), received a telephone call from MARK LESLIE LIVELY (hereinafter "LIVELY"), on telephone number (304)761-2385. Based on my training, experience, and the investigation thus far, I believe LIVELY told FUNDERBURK that he would like five ounces of methamphetamine but that if FUNDERBURK only had four ounces of methamphetamine that LIVELY would accept four ounces ("I would like to get five of them. So if you only got four of them, I will take all four of them.").

4

9. On the same date, at 5:41 PM (Session 01913), FUNDERBURK and LIVELY agreed to meet at the Church of Nazarene located at 2213 Washington Street West, Charleston, West Virginia 25387 so that LIVELY could receive five ounces of methamphetamine from FUNDERBURK. Surveillance monitored the GPS tracker on the SUBJECT VEHICLE. Surveillance observed a maroon Chevrolet Colorado bearing West Virginia registration 77C588 pull up in the alleyway behind 2207 Washington Street West, Charleston, West Virginia 25387, which is JOHN PAUL LOUDERMILK's address.

10. Surveillance observed LIVELY get out of the maroon Chevrolet Colorado and FUNDEBURK get out of the SUBJECT VEHICLE to meet. After they met and had a quick interaction, LIVELY got back in his Chevrolet Colorado and drove off heading East in the alleyway. Surveillance followed LIVELY from 21st Street and Washington Street West in Charleston, West Virginia to Washington Street West and Route 21 in Charleston, West Virginia where Lively went North on Route 21.

11. During this time, law enforcement observed several West Virginia Code violations relative to LIVELY's vehicle. Charleston Police Department officers conducted a traffic stop on LIVELY at Dale's Bar parking lot located at 1942 Sissonville Drive, Charleston, West Virginia 25387. A trained narcotics detection canine responded to the location and conducted a free air sniff of the exterior of LIVELY's vehicle. The canine provided a positive alert indicating the presence of the odor of controlled substances on the vehicle. A search of the vehicle was then conducted by officers and suspected methamphetamine was located underneath the dashboard of the vehicle. Officers issued LIVELY a summons for simple possession of a controlled substance and LIVELY was released from the traffic stop. The suspected methamphetamine weighed approximately 141.4 grams and field tested positive for methamphetamine.

5

12. On March 1, 2023, at 2:59 PM, FUNDERBURK, on TARGET TELEPHONE #6,(SESSION 02534) told an unknown male on a call that he is currently driving "the white car," which investigators understood to be a reference to the SUBJECT VEHICLE.

13. On March 1st of 2023 at 4:37 PM, ANTONIO JEFFRIES (hereinafter "JEFFRIES"), using TARGET TELEPHONE #6, placed an outgoing call (SESSION #02546) to JEREMY WALKER (hereinafter "WALKER"). The following was discussed.

WALKER: Whats up Scoot?

JEFFRIES: Yo

WALKER: What's up

JEFFRIES: Where you at?

WALKER: Just picked (UI) from school

JEFFRIES: You got something for me?

WALKER: Uh, yeah, give me like thirty minutes

JEFFRIES: Hey, let me get a ride to the crib

WALKER: Say what?

JEFFRIES: Let me get a ride to the crib.

WALKER: Damn bro, I just got off of work, I'm tired as shit.

JEFFRIES: Me too, I just got off too.

WALKER: Aint you with Scoot?

JEFFRIES: Huh?

WALKER: I said aint you with Scoot?

JEFFRIES: Yeah, like he aint trying to take me down there. He said he dirty.

WALKER: Take you down where?

6

JEFFRIES: St. Albans.

WALKER: St Albans? Ah yeah, you're going to have to give me like thirty minutes.

JEFFRIES: Alright

WALKER: Alright

14. Based on my training, experience, and the investigation thus far I believe that JEFFRIES called WALKER from FUNDERBURKS phone. JEFFRIES asked WALKER if he had money for him ("You got something for me?"). WALKER said he did but that he would need thirty minutes to get it ("Uh, yeah, give me like thirty minutes"). JEFFRIES asked WALKER to give him a ride home ("Hey, let me get a ride to the crib".) WALKER complained that he had been at work all day and was tired, then asked JEFFRIES if he was with FUNDERBURK ("Damn bro, I just got off of work, I'm tired as shit . . . Aint you with Scoot?".) JEFFRIES told WALKER he was with FUNDERBURK but that FUNDERBURK did not want to take him home because he had controlled substances with him ("Yeah, like he ain't trying to take me down there. He said he dirty.") JEFFRIES told WALKER he needed to go to Saint Albans, West Virginia and WALKER said he would need around thirty minutes ("St. Albans? Ah yeah, you're going to have to give me like thirty minutes.") A few minutes later, law enforcement observed via pole camera as FUNDERBURK walked from Michael Jeffries' house at 846 Anaconda Ave, Charleston West Virginia, then drove off in the SUBJECT VEHICLE.

15. During the course of this investigation, law enforcement has observed FUNDERBURK travel in the SUBJECT VEHICLE and other vehicles. It is believed that FUNDERBURK uses the SUBJECT VEHICLE to transport money and illegal controlled substances. By tracking the vehicle in question, agents believe it will provide valuable information in determining the locations where FUNDERBURK stores controlled substances, the proceeds of

drug trafficking, and locations where he meets with co-conspirators in the drug trafficking organization. This would assist officers in determining the scope of the organization in West Virginia. It would also assist surveillance officers in maintaining visual contact with FUNDERBURK without being detected.

16. Based on my own observations and the observations of other law enforcement officers, and information obtained during the course of this investigation, it is believed that the SUBJECT VEHICLE will be used within the Southern District of West Virginia as FUNDERBURK uses it to meet with co-conspirators in the drug trafficking organization. This belief is based on information obtained during the course of the investigation and the routines observed by investigators as corroborated by the SUBJECT VEHICLE being located in Charleston, West Virginia, within the Southern District of West Virginia.

17. In order to track the movement of the SUBJECT VEHICLE effectively and to decrease the chance of detection, I seek authorization to continue monitoring a GPS tracking device that was previously installed on the SUBJECT VEHICLE . If FUNDERBURK parks the SUBJECT VEHICLE in a driveway or on other private property for long periods of time, including overnight, it may be necessary to enter onto private property (not including enclosed places such as garages) to effect the, repair, replacement, and removal of the tracking device. The property where FUNDERBURK has been seen consistently parking the SUBJECT VEHICLE is 1548 Lee Street East, Charleston West Virginia. Based on prior investigation and observation in this matter, it is believed that the SUBJECT VEHICLE will be located at a location in Kanawha County, West Virginia, within the Southern District of West Virginia.

18. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize, maintenance, replacement, and removal

8

of the tracking device during both daytime and nighttime hours. It is requested that the Court authorize the executing officers to enter onto private property to effect the repair, replacement, and removal of the tracking device. Such entry onto private property would be limited to driveways, roads, carports, parking pads, or similar outdoor locations not requiring entry into enclosed spaces like a garage.

19. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days from the date this warrant is issued. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

## AUTHORIZATION REQUEST

20. Based on the foregoing, I request that the Court issue the proposed tracking warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 3117, that authorizes members of the FBI or their authorized representatives, including but not limited to other law enforcement agents and technicians assisting in the above-described investigation, to continue to monitor a tracking device that was previously installed on the SUBJECT VEHICLE within the Southern District of West Virginia, to maintain, repair, and/or replace the tracking device as necessary, and to remove the tracking device from the SUBJECT VEHICLE after the use of the tracking device has ended; to replace, maintain, and remove the tracking device during both daytime and nighttime hours; to surreptitiously enter private property to effect the repair, replacement, and removal of the tracking device; and to monitor the tracking device for a period of 45 days following the issuance of the warrant, including when the tracking device is inside private garages and other locations not open to the public or visual surveillance, both within and outside the Southern District of West Virginia.

21. In accordance with 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), I further request that the warrant delay notification of the execution of the warrant for 120 days after the warrant is signed because there is reasonable cause to believe that providing immediate notification may have an adverse result, as defined in 18 U.S.C. § 2705. The investigation is ongoing and complex, and agents believe that it will continue for several months before concluding. Providing immediate notice would seriously jeopardize the ongoing investigation by prematurely revealing its existence and giving suspects an opportunity to flee from prosecution, destroy or tamper with evidence, intimidate potential witnesses, notify confederates, and change patterns of behavior.

22. I further request that the Court seal the warrant and the affidavit and application in support thereof, except that copies of the warrant in full or redacted form may be maintained by the United States Attorney's Office and may be served on Special Agents and other investigative and law enforcement officers of the Federal Bureau of Investigation, federally deputized state and local law enforcement officers, and other government and contract personnel acting under the supervision of such investigative or law enforcement officers, as necessary to effectuate the warrant. These documents pertain to and discuss an ongoing criminal investigation that is neither public nor known to all the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. Sealing these documents will also better ensure the safety of agents and others.

Respectfully submitted,

Owen B Morris
Detective/TFO
Metro Drug Enforcement Network Team/
FEDERAL BUREAU OF INVESTIGATION
TOC West Task Force

Sworn to by the affiant telephonically in accordance with the procedures of Rule 4.1 this 3rd day of March, 2023.

HONORABLE DWANE L. TINSLEY
United States Magistrate Judge

11